Good morning. Mr. Guzman's conviction must be reversed. The court below erred when it ruled that it was not improper for the prosecutor to use the recess to confer with Agent Perry, and the government violated Brady by failing to turn over the, before the suppression hearing, evidence showing Agent Perry had tampered with his own rough notes. These errors affect the integrity of the proceedings as they involve the only government witness of the most important evidence offered on the only issue at trial. First, the court's ruling that it was not improper for Agent Perry and the prosecutor to confer during the recess was error under Perry v. Leake. Which? Perry v. Leake? Perry v. Leake, Your Honor, is 488 U.S. 272. Okay. And what did that hold? In that case, the Supreme Court stated that where a lawyer confers with his witness during a 15-minute recess before cross-examination, there is a virtual certainty that any conversation between the witness and the lawyer would relate to the ongoing testimony. The Court asked me what that case held. That case held that it was not a violation of a defendant's Sixth Amendment rights for a court to preclude the defendant from conferring with his counsel during such a short recess while the witness was on the stand. Perry does have – does state, as I just said, that there is a virtual certainty that any conversation, such as the one that took place here, will relate to the ongoing testimony. And under Perry, such consultation – You mean such as took place in Perry or such as took place in this case? I mean both, Your Honor. What conversation took place? We have a record here. Of course, there actually is. The Court said we didn't talk. Well, that – this is – this is exactly what happened, Your Honor. The defense counsel objected, saying, Agent Perry is still on the stand, he is still a witness, and has been conferring with government counsel concerning the substance of the testimony. Well, I know that's what the defense counsel said, but then the witness was examined, was he not? That's correct. Later, he was – He said we didn't talk. That's correct. But before that happened, the prosecutor admitted conferring, when he said, Your Honor, I don't see anything improper about me conferring with the witness prior to my questioning the witness. It is true that later when the witness, when the agent was on the stand, that he said that nothing had been said. As an admission that they were conferring. Yes. That's correct. He never – nor did he later deny conferring. He said that he had never coached witnesses and did not attempt to coach this witness. But his first statement after being – after the subjection was raised, his immediate statement was, I don't see anything improper about me conferring. The Court should also consider the credibility of Agent Perry when it considers whether Agent Perry's statements about what happened during that recess are to be taken at face value. Agent Perry – Agent Perry's testimony was malleable. First on cross-examination, when asked, So it is your – it is your testimony here today that at no time after the interview, you added that statement, told marijuana. Answer, No, sir. Okay. Well, let's not get off into that issue. Let's stick with this one for a moment. There are two issues. One, whether he actually discussed the subject of the testimony. And two, whether if he did, that's a violation or that's a cause for reversal. So the first question is a factual one. Did the district court make a finding? It made no finding, Your Honor. And I would point out that to – relevant to that factual determination is that in Perry, the Court says that in a short recess such as this one, when the witness is on the stand, it is appropriate to presume that nothing but the testimony will be discussed. That's 488 U.S. at 284. And then bolstering that presumption are the statements by defense counsel that he had witnessed Agent Perry conferring with the prosecutor and the prosecutor's statement that he didn't see anything wrong with that. So there was conferring here. A further question the Court might be interested in is did the conferring impede the truth-seeking function of the trial? And clearly, that happens here. If I may, Your Honor. Kennedy, what change do you think there was in the testimony between the testimony prior to the recess and after the recess? The change was dramatic, and I'll recite it now. At first, as I had already said, the question posed to Agent Perry was, so it is your testimony here today that you did not add that statement, told Marijuana, answer. I don't remember adding it at a later time. Then there's the break, the recess. And after that recess, on redirect, this statement was added, told Marijuana,   Marijuana, answer. This is the question, or this is Agent Perry's testimony. Well, I can maybe explain. Question posed by the prosecutor, would you agree with me that would have had to have been added between November 4th and November 12th? Answer, absolutely. So there was a dramatic change between the two. Well, he never – he still didn't say afterwards that he remembered doing it. He said the time it would have had to have been done was during this period of time. I don't think there's a lot of doubt about – or much difference. But it was done – clearly, if it was done, it was done later on. But I thought he maintained throughout that he didn't remember doing it, but he said, well, I must have done it. Well, he comes up with a very detailed explanation, which contradicts the notion that he professed a total absence of memory about having done it. I thought the explanation was why he wouldn't have remembered that he did it. I think he said that he – that he had worked very late and that he went in the next morning and reviewed his notes, and at that point he would have made the change. It's either a very well-crafted explanation for something he does regularly and therefore should have been prepared to deal with before he went to testify, or it's evidence that he actually did have some memory and just didn't want to completely reveal exactly what he had done and why he had done it. Well, as I understand it, the government produced two sets of notes. Before the suppression hearing, notes did not have – that they produced did not have told marijuana. That's correct. After the suppression hearing, notes produced were told marijuana. That's correct. All right. And you're making another – you're raising another claim with respect to that. But what I don't understand factually is clearly the prosecutor knew he had produced two sets of notes. Otherwise, he wouldn't have produced two sets of notes. So you don't think that he elicited before the agent even got on the stand some sort of explanation for the two sets of notes? No, I do not. I actually do not think that – I think that the Court is correct that the prosecutor is charged with recognizing what he had done, but I don't think the prosecutor did recognize that. And I think that's one of the reasons he asked for the time, because he hadn't anticipated this line of questioning and hadn't recognized that there was such a change in the notes. Well, the first answer the officer gave was that he had not made a change. That's correct. So he had not been prepared by the prosecutor to explain how or why he made the change. Certainly. He didn't even – Before the trial. That's correct. It's – but he did admit before the break that he just didn't remember making a change. He backed off saying, no, I didn't. When he was confronted with the notes, he said, you know, I don't remember doing it. But he didn't deny at that point that he had done it. No, that's correct. He didn't – he backed away from denying to professing that he did. And then after the break, he was asked sort of to explain how this could have happened, right? That's correct. But that's not a change in testimony. I mean, you could say that the prosecutor helped him come up with an explanation that would be reasonable. I guess that's the most you could make of the break. Well, I think it was – I think it was a change in the testimony because he went from being a person who was surprised by what was going on to being a person who had been able to collect himself, reflect on the events, look at the things that the prosecutor then showed him on cross – on redirect. And, of course, we don't know what else transpired during that conversation. But suddenly he became a person who – and I think the Court might have noticed his odd use of verb tenses during his explanation of what he thought he might have done. And he has – he gives a very detailed and rather somewhat difficult to understand explanation for what he did that I believe was – that he intended to obscure any of the – any wrongdoing by – any wrongdoing by him. It was – let's see if I can find it. The point is that he became a person on redirect who had a detailed explanation for what he had done. Even if it might be considered consistent with somebody who didn't remember because it was imperfect, it was certainly an attempt to give a credible explanation that would prevent the jury from believing that he was somebody who had engaged in wrongdoing. And so he had the opportunity to create, again, this explanation that would rehabilitate his credibility before the jury. So the – in that sense, it did impede the truth-seeking function of this trial because Agent Perry was – and this is the very concern that the Supreme Court was concerned about. The consultation between this prosecutor and this witness gave Agent Perry the chance to collect himself, to reflect on what had happened, and to – and ultimately the tool of cross-examination, which is considered so very important to the truth-seeking function of any trial, was – was broken, I submit, or at the very least dulled.  I'm sorry. Let me ask you one more question. I'm not quite clear about the position you're taking about an ABA rule. Are you arguing that there is a rule that says the prosecutors may not talk to witnesses during their testimony? Your Honor, I think that I – well, I know that I misread that rule, as government counsel has pointed out very, very thoroughly, and I apologize for that misreading. Well, that's all right. But you're not asserting there's any – My – my argument rests on Perry v. Lake. Thank you. Thank you. May it please the Court. Mark Ray here from the United States. Your Honors, to pick right up where defense counsel left off, there's absolutely nothing in Perry v. Lake that holds that it's inherently unethical or a violation of the Fifth or Sixth Amendments for a prosecutor to confer with the witness during a break in that witness's testimony. What Perry held was that it was not a violation of the defendant's rights for the district court in that case to forbid consultation. The court did not hold that in every case a district court must make such an order. And, in fact, defense counsel had cited 488 U.S. at page 284. It's a short sentence on that exact same page that I would like to read for the Court. It says, Our conclusion does not mean that trial judges must forbid consultation between the defendant and his counsel during such brief recesses. The Court goes on to say that it's in the discretion of every court on that particular matter. Well, it could be a different rule about the prosecution and the defense. I don't know whether there is or not. But certainly I think that makes it clear that in the case of a defendant, there's no prohibition against talking to the lawyer during a recess. Is there anything more specific with respect to a prosecutor's duty? I believe, Your Honor, we have cited cases, not from this circuit, but there are three out-of-circuit cases, Bautista, Dijon, and Conner and Rodriguez. And I believe, for sure, at least one of those did involve a prosecutor and a witness. But another thing to keep in mind here, though, Your Honors, is in this case, when Perry, a big part of Perry's rationale for why district courts may sometimes want to exercise discretion to prevent recess consultation is that after direct testimony before cross-examination, a defendant can regroup. And that exactly, that was the factual context in that case. That wasn't the case here. Here, there was direct testimony, and then the defense dropped all its bombshells. They were able to do that on cross-examination. And then a break happened before redirect. Now, the district court did allow the defense to briefly reopen cross after that break. But this wasn't a situation where the consultation happened between direct and cross-examination. A couple other facts to keep in mind are that when the prosecutor asked for this recess, there was no objection whatsoever from the defense counsel. Well, Bautista says that the government conceded there that a prosecutor should not discuss a government witness's testimony with that witness during a break in his cross-examination, even where a judge had not formally prohibited such communication. Are you distinguishing that on the basis that the difference between a break in cross-examination and the type of break that occurred here? Not exactly. I'm just pointing that out as one more reason to distinguish this case from Perry. But I do want to make clear, we're not making that concession here. That concession was made in Bautista. There was no citation to it. It was the same government witness. It was, Your Honor. Yes. But, you know, I mean, to express a little of our frustration in this case, it's a serious claim to raise an allegation of misconduct against a prosecutor. Well, no, there's a question. It may be that. I mean, one of the first questions is, is there anything wrong with it? Your opponent's position is that there's something wrong inherently with a discussion between a prosecutor and a witness once the witness's examination has started and things have been brought out. Your position is that there's nothing inherently wrong with that. There's not. So it's not as if you're saying here's a very bad guy who, you know, did something terrible. It's a basic disagreement on what the rules should be. I mean, I would submit that in courtrooms across this country every single day, attorneys confer with the people that they call during breaks. It's not uncommon. They don't want to say, well, you told me this the other day and now you're testifying to this. Did you leave anything out? Well, that was my reaction when I read this, but. Mine, too. But then I read what the government conceded in Bautista and that in some of the other cases there are suggestions that it's not a thing to do, at least, whether it justifies a reversal. But there are suggestions in cases that it's not. There's a real risk in allowing prosecutors to talk to their witnesses once the defense has started exposing weaknesses in the story. I mean, I thought the purpose of breaks often was to try to rehabilitate your witness. But that may not be what the rule is. I mean, but, Your Honor, another thing to keep in mind, in this case the defense was allowed to thoroughly cross-examine the witness on the substance. I mean, we sort of start on this premise. There was an allegation by defense counsel that, oh, during the break he looks across the room, maybe he sees mouths moving. He never once said that he heard anything in particular. The district court asked the prosecutor, what did you talk about? The prosecutor said, I asked the witness for a copy of his original notes, which was only natural after the defense drops this bombshell that there were two versions of the notes. Why was that a bombshell? It seems that's a part of this that seems so odd to me, because the government produced both sets of notes. Well, I would ultimately agree. I mean, I'm almost making their case a little for them. The whole point here is they're saying this was their only issue with impeach Agent Perry. We're saying that we produced both sets of notes 22 days before trial. But you may not have known you did. That seems to be what happened. Right. I would agree with that. And isn't it inherently just suspect that these words were added to the final notes which prove an element of the crime that's essential to the government's case when they weren't in the rough notes? It just seems that there's something very inherently suspect about this whole thing. You know, I'll tell you, Your Honor, I didn't try this case before. And when I first read this record, I had the same reaction you did. But I can tell you now, sincerely, there are good explanations. So if it might have seemed that way at first, it's not anymore. And here's why, Your Honor. This case, as B.J. Shonson might know for sure, being that he sits in our district a lot, this was a reactive case. This wasn't a kind of an 18-month investigation. These kind of arrests happen 24 hours a day. This agent made this interview at 4 in the morning. And because he wants to comply with the 48-hour rule, he copies all his papers and sends them over to our office as soon as possible so that this defendant can get his probable cause determination before 48 hours. His explanation at trial was that he was tired the next day and he noticed that discrepancy. Now, that explanation is corroborated by the fact that the rough draft of the ROI, which this Court requested a couple weeks ago, contains the statement at issue, as did the final ROI, which was written only eight days after those notes were taken. The defense in the court below proffered that, oh, this alteration must have happened after the suppression hearing months into this case. That ROI has the exact same statement in it. So that corroborates this explanation. Another thing is, this, these two words, told marijuana, they're not, they don't just come out of the blue. They don't contradict what is in the remainder of the notes. The remainder of the notes talk about getting paid $500. There's a reference to 10 to 12 kilograms. There's a reference to dropping this car off to an unknown man at a gas station. It's not as if the rest of the notes say, oh, I was only in Mexico to say drop my mother off at the airport and go visit some cultural attractions. And, oh, by the way, I was told there was marijuana. That's not true. If you look at these notes, this fits into the context of everything else that was  So that's why I say I feel I can confidently represent this Court that even if it does seem odd at first, he had an explanation. The jury heard this explanation. They still decided to convict. But I actually would like to segue to the other one. Kennedy. Well, one more question about that, because I agree with you that there's a, there's at least a related significant statement in the original version. The 10 to 12 kilograms told told for $500. I don't know what that means. Told or sold. But that does suggest something about a drug transaction in the original notes. But what what puzzles me about this is this so common that you revise your notes with it with an important, obviously important statement. And you don't even remember having done it. Does he regularly change the notes? I have no idea, Your Honor. I mean, it's not in the record. Because if it's something that's unusual, you would think he would have remembered it. If it's something he does regularly and there are always two sets of notes, it's a little disturbing. Well, I mean, maybe he's a conscientious agent. Most of the time he doesn't make this kind of mistake. And maybe most of his other cases happen at 4 in the afternoon instead of 4 in the morning. I mean, we can't. I don't remember changing the notes. Well, but, you know, at this point it's a guessing game, Your Honor. But they were able to bring all that in front of the jury. And that's why it's interesting. Most Brady claims, it's a claim where evidence, disputed evidence was never brought before the jury and we have to engage in all kinds of supposition as to what would have happened at trial. But the final comments I want to make with respect to the Brady claim, that's why the Brady claim here is in the context of the suppression hearing. I don't think, two quick, quick points, Your Honor. I don't think this would have reasonably affected the outcome, because as I just explained, I think it was a de minimis hit on his credibility. He provided a reasonable explanation at trial that was corroborated by the draft and final ROIs, and it was corroborated by other references to a drug transaction in those notes. But the other thing is, Your Honor, even if you assume the worst here, as we pointed out in our Rule 28J letter last week, this information, even if you accept their They had it in time to make use of it. They could have made a renewed motion to suppress. They could have asked the Court to reconsider its suppression ruling or to reopen the suppression hearing. Or under Rule 16, they could have asked for continuance. But they didn't. They wanted to have that advantage in trial where they have the element of surprise. They got their surprise. They got their change in testimony. They were able to put all that in front of the jury. He's still lost. And now they want this Court to go back and to suppose that somehow this would have made a difference at the suppression hearing, and you submit that it would not have. Unless there are any further questions, I submit. Thank you, counsel. Thank you, Your Honor. Just briefly, I'd like to address some of the points made by government counsel. This may be a case that is no big deal to the government, did not involve significant investigation by them, but this is a case that is a very big deal to then-18-year-old Issei Guzman. Did you try this case, Ms. Pearson? I did not, Your Honor. The fact that the report of investigation has a particular statement may be something that helps the government. It is typical in cases like these for defense counsel to request rough notes so that we can have at least some sense of what actually happened during an interrogation. There's no other recording of what happened. And so the rough notes are of vital importance. The government counsel said that under Perry, it is not inherently unethical for a lawyer to speak to his witness while that witness is on the stand. And that is true. Perry said that it is not unethical to do so, but that nevertheless, there are constitutional concerns raised by such conversations. And those concerns are so significant that they are considered to affect the very truth-seeking function of a trial. Government counsel said that. I don't quite understand that. If they thought that those discussions raised these serious constitutional questions to go to the very truth-seeking function of a trial, why don't they say it's unethical to do it? Why would they go out of the way to say it's not unethical, but it has so dangerous and serious and threatens the Constitution? That's very odd. I agree with the Court. That does seem odd. I think it can be explained by the fact that there is no deceit intended on the part of the counsel, but that giving the witness the opportunity to reflect and to regroup with counsel and to get any comments that counsel might have about the testimony gives the witness an advantage, either on cross-examination or on redirect. The government stated that one important distinction between Perry and this case is that in Perry, the conversation or the break happened after a direct examination and before cross-examination. The same concerns obtain here. The concern is that the cross-examination be performed unimpeded so that the truth can be brought out of the witness. And here, the government counsel was able to overcome the impeachment that had been the impeachment of Aja Perry by conversing and by having the opportunity to come up with an explanation over how he had changed his breath notes. Finally, I would like to say that the Bautista and Dijon and the Calderon-Rodriguez cases all involved overnight recesses under Perry. I would like to reiterate that distinction is of constitutional significance. The break in Perry was a short recess while the witness was on the stand, and it was that difference, only that difference, that allowed the Perry court to distinguish getters and to decide that a defendant has no constitutional right to counsel during breaks such as those. Thank you. Thank you very much. Thank you both. The case just argued will be submitted. The next case for oral argument is the United States of America versus 2,164 more or less. Thank you.
judges: Reinhardt, Thompson, Wardlaw